UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

JOSE ESPOSORIO GOMEZ CRUZ, JOSE          :
REYNALDO PEREZ a/k/a JUNIOR, JUAN        :
LUNA and RUFINO FLORES GODINES,          :
                                         :
                          Plaintiffs,    :       **REPORT AND RECOMMENDATION**
                                         :
        – against –                      :       24 Civ. 2657 (MKB) (VMS)
                                         :
DING FENG LIN CONSTRUCTION LLC and :
HE SHUN CHEN, individually,              :
                                         :
                          Defendants.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**Vera M. Scanlon, United States Magistrate Judge:**

This is an action brought by Plaintiffs Jose Esposorio Gomez Cruz ("Mr. Gomez Cruz"),

Jose Reynaldo Perez a/k/a Junior ("Mr. Reynaldo Perez"), Juan Luna ("Mr. Luna") and Rufino

Flores Godines ("Mr. Flores Godines") (collectively, "Plaintiffs") to recover damages for alleged

violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. (the "FLSA"), and the New

York Labor Law, N.Y. Lab. L. §§ 190 et seq.; 650 et seq., and the corresponding New York

regulations (the "NYLL"). Before the Court is Plaintiffs' motion for a default judgment. For the

reasons stated below, the Court respectfully recommends that Plaintiffs' motion be granted in

part and denied in part as to liability and denied without prejudice as to damages.

First, the undersigned respectfully recommends that Defendants be found liable for the

relevant periods as described below:

(1) to Mr. Gomez Cruz for overtime violations under the FLSA and the NYLL, and

wage-notice and wage-statement violations under the NYLL;

(2) to Mr. Reynaldo Perez for overtime violations under the FLSA beginning April 9,

2021; for overtime violations under the NYLL beginning January 1, 2018; for minimum-

1

wage violations under the NYLL from December 31, 2019, to December 31, 2020; and

for wage-notice and wage-statement violations under the NYLL beginning August 24,

2017;

 (3) to Mr. Luna for overtime violations under the FLSA beginning April 9, 2021; for

overtime violations under the NYLL beginning April 1, 2018; and for wage-notice and

wage-statement violations under the NYLL beginning August 24, 2017; and

(4) Mr. Flores Godines for overtime violations under the FLSA and the NYLL, and

wage-notice and wage-statement violations under the NYLL.

Second, the undersigned respectfully recommends that Plaintiffs' motion for default

judgment be denied as to Mr. Gomez Cruz's minimum-wage claims, Mr. Reynaldo Perez's

minimum-wage claims under the FLSA, Mr. Luna's minimum-wage claims, Mr. Flores

Godines's minimum-wage claims and any claims prior to the limitations periods as described

above.

Third, the undersigned respectfully recommends that Plaintiffs' motion for default

judgment be denied without prejudice as to Plaintiffs' damages, and that Plaintiffs be permitted

to file a motion for damages and other monetary relief based on supporting evidence, sworn or

affirmed to by Plaintiffs or other persons with personal knowledge, consistent with this report

and recommendation within 30 days of its adoption, if it is adopted.

## I.    BACKGROUND

The following facts are taken from Plaintiffs' complaint at ECF No. 1.  In light of

Defendants' failure to challenge Plaintiffs' allegations by participating in this lawsuit, the Court

will accept all factual allegations in the complaint as true for the purposes of this motion.  See

Bricklayers & Allied Craftworkers Local 2 Albany, N.Y. Pension Fund v. Moulton Masonry & Construction, LLC, 779 F.3d 182, 187 (2d Cir. 2015).

### A.    Factual Background Regarding Defendants

At all times relevant to this action, Defendant Ding Feng Lin Construction LLC ("DFL") was a construction company located in Kings County, New York.  See Compl. ¶¶ 22, 24, ECF No. 1.  Defendant He Shun Chen ("Mr. Chen") was an "owner, officer and/or agent" of DFL.  Id. ¶ 23.  Mr. Chen had the power to hire and fire Plaintiffs.  Id. ¶¶ 23, 31.  He also controlled the terms and conditions of Plaintiffs' employment, including Plaintiffs' compensation.  See id.  Defendants maintained gross annual sales of $500,000 or greater.  See id. ¶ 32.

### B.    Factual Background Regarding Plaintiffs

The Court will discuss the wages and hours worked for each Plaintiff below.

#### 1.    Mr. Gomez Cruz

Mr. Gomez Cruz worked for Defendants as a construction worker from around September 2021 to September 20, 2023.  See id. ¶¶ 36-37.  Throughout this time, Mr. Gomez Cruz worked from 7:00 AM to 5:00 PM, five days per week, without meal breaks.  See id. ¶¶ 41, 45.  Mr. Gomez Cruz worked approximately ten hours per day and fifty hours per week.  See id. ¶ 41.  Mr. Gomez Cruz was paid in cash.  See id. ¶ 42.

From approximately September 2021 to approximately August 2022, Mr. Gomez Cruz earned a flat rate of $170 per day.  See id. ¶ 43.  Mr. Gomez Cruz's hourly rate during this time period was $17 per hour ($170 divided by 10).[1]  Beginning approximately September 1, 2022,

---

[1] Although Plaintiffs do not suggest a means for calculating their hourly rates in the complaint, in their damages statement, Plaintiffs base their calculation of their hourly rates without reference to overtime pay.  See generally Compl.; Sojo Decl. Ex. I, ECF No. 29-9.  Because Defendants failed to actively participate in this litigation, the Court will accept Plaintiffs' theory that

Mr. Gomez Cruz received a raise in pay, earning a flat rate of $180 per day from approximately September 1, 2022, to approximately September 20, 2023.  See id. ¶ 44.  Mr. Gomez Cruz's hourly rate during this time period was $18 per hour ($180 divided by 10).

Throughout Mr. Gomez Cruz's employment, Defendants did not use any means to track the hours that Mr. Gomez Cruz worked, nor did they provide Mr. Gomez Cruz with a wage notice, wage statements or any information about New York's minimum-wage and overtime laws.  See id. ¶¶ 46-49.

### 2.    Mr. Reynaldo Perez

Mr. Reynaldo Perez worked for Defendants as a construction worker from around 2016 to November 17, 2023.  See id. ¶¶ 51-52.  Throughout this time, Mr. Reynaldo Perez worked from 7:00 AM to 5:00 PM, five days per week, without meal breaks.  See id. ¶¶ 56, 62.  Mr. Reynaldo Perez worked approximately ten hours per day and fifty hours per week.  See id. ¶ 56. Mr. Reynaldo Perez was paid in cash.   See id. ¶ 57.

From approximately 2018 to sometime in 2020, Mr. Reynaldo Perez earned a flat rate of $140 per day.  See id. ¶ 58.  Mr. Reynaldo Perez's hourly rate during this time period was $14 per hour ($140 divided by 10).  Beginning in or around 2021, Mr. Reynaldo Perez received a raise in pay, earning a flat rate of $150 per day from approximately 2021 to approximately December 2022.  See id. ¶ 59.  Mr. Reynaldo Perez's hourly rate during this time period was $15 per hour ($150 divided by 10).  Mr. Reynaldo Perez received a raise in pay again in around December 2022, earning approximately $160 per day until around April 2023.  See id. ¶ 60.  Mr. Reynaldo Perez's hourly rate during this time period was $16 per hour ($160 divided by 10).  In

---

Plaintiffs were only paid straight time without overtime as the proper basis for calculating Plaintiffs' hourly rate.

or around May 2023, Mr. Reynaldo Perez received a fourth raise in pay, earning $170 per day up until the end of his employment on around November 17, 2023. See id. ¶¶ 51, 61. Mr. Reynaldo Perez's hourly rate during this time period was $17 per hour ($170 divided by 10).

Throughout Mr. Reynaldo Perez's employment, Defendants did not use any means to track the hours that Mr. Reynaldo Perez worked, nor did they provide Mr. Reynaldo Perez with a wage notice, wage statements or any information about New York's minimum-wage and overtime laws. See id. ¶¶ 63-66.

### 3. Mr. Luna

Mr. Luna worked for Defendants as a construction worker from around 2013 to around September 27, 2023. See id. ¶¶ 68-69. Throughout this time, Mr. Luna worked from approximately 7:00 AM to 5:30 PM, five days per week, without meal breaks. See id. ¶¶ 73, 77. Mr. Luna worked approximately ten hours per day and fifty hours per week.[2] See id. ¶ 73. Mr. Luna was paid in cash. See id. ¶ 74.

From approximately 2018 to approximately 2019, Mr. Luna earned a flat rate of $150 per day. See id. ¶ 75. Mr. Luna's hourly rate during this time period was $15 per hour ($150 divided by 10). Beginning in or around 2020, Mr. Luna received a raise in pay, earning a flat rate of $190 per day from approximately 2020 to approximately 2023. See id. ¶ 76. Mr. Luna's hourly rate during this time period was $19 per hour ($190 divided by 10).

---

[2] Although the complaint states that Mr. Luna worked from 7:00 AM to 5:30 PM without meal breaks for five days a week, which adds up to 52.5 hours per week, see Compl. ¶ 73, the Court will accept Mr. Luna's allegation that he worked around 50 hours per week, which averages to approximately ten hours per day (50 divided by 5).

Throughout Mr. Luna's employment, Defendants did not use any means to track the hours that Mr. Luna worked, nor did they provide Mr. Luna with a wage notice, wage statements or any information about New York's minimum-wage and overtime laws. See id. ¶¶ 78-81.

### 4.    Mr. Flores Godines

Mr. Flores Godines worked for Defendants as a construction worker from around August 1, 2023 to around September 27, 2023. See id. ¶¶ 83-84. Throughout this time, Mr. Flores Godines worked from approximately 7:00 AM to 5:00 PM, five days per week, without meal breaks. See id. ¶¶ 88, 92. Mr. Flores Godines worked approximately ten hours per day and fifty hours per week. See id. ¶ 88. For two weeks, Mr. Flores Godines worked from 7:00 AM to 5:00 PM for six days per week without meal breaks, for approximately sixty hours per week. See id. ¶ 89. Mr. Flores Godines was paid in cash. See id. ¶ 90.

Throughout his employment, Mr. Flores Godines earned a flat rate of $170 per day. See id. ¶ 91. Mr. Flores Godines's hourly rate during this time period was $17 per hour ($170 divided by 10).

Also throughout Mr. Flores Godines's employment, Defendants did not use any means to track the hours that Mr. Flores Godines worked, nor did they provide Mr. Flores Godines with a wage notice, wage statements or any information about New York's minimum-wage and overtime laws. See id. ¶¶ 93, 95-98. At least once, Defendants required Mr. Flores Godines to sign some document, although he was not allowed to review its contents "in detail." Id. ¶ 94.

All Plaintiffs bring claims against Defendants for failure to pay minimum wage under the FLSA and NYLL, failure to pay overtime premiums under the FLSA and NYLL, failure to provide wage notices under the NYLL, and failure to provide wage statements under the NYLL. See id. ¶¶ 115-142.

### C.      Procedural History

Plaintiffs filed this action on April 9, 2024.  See ECF No. 1.  Pursuant to N.Y. Ltd. Liab. Co. L. § 303, service of process on DFL was effectuated via personal service on an agent of the New York Secretary of State.  See ECF No. 9.[3]  Service of process was effectuated on Mr. Chen after three attempts to serve Mr. Chen personally at his home address, by affixing the summons and complaint to his door.  See ECF No. 8.  The process server also mailed a copy of the summons and complaint to Mr. Chen at the same address.  See id.

When Defendants missed their deadlines to answer, Plaintiffs filed two letters with the Court stating that Plaintiffs mailed the docket and the Court's Order scheduling an initial discovery conference in this action to Defendants' last known addresses and seeking direction as to how to proceed with the case, given that Defendants had not appeared.  See ECF Nos. 11 & 12.  In response to Plaintiffs' letters, the Court scheduled a conference to "discuss Plaintiffs' anticipated requests for entries of default and motion for default judgment."  9/30/2024 Order. The Court mailed this Order to Defendants at the address provided by Plaintiffs, warning Defendants that

> [b]ecause Defendants have not responded to this lawsuit by answering the complaint or moving to dismiss it, the Court may award damages against Defendants and in favor of Plaintiffs should Plaintiffs request entries of default and move for a default judgment, for which Defendants would be liable.  If Defendants do not participate in the lawsuit now, they would likely waive their right to raise factual or legal defenses that they may have to Plaintiffs' claims.

---

[3] The New York Secretary of State Public Records lists the mailing address for DFL as 6143 170th Street, Fresh Meadows, New York 11365.  See Search Our Corporation and Business Entity Database, N.Y. Dep't of State Div. of Corps., at https://apps.dos.ny.gov/publicInquiry/ (last visited Aug. 12, 2025) (entering "Ding Feng Lin" into the "EntityName" field and selecting "LimitedLiabilityCompany" in the "Entity list" field).

Id.  The mailing sent to DFL's business address at 6143 170th Street, Fresh Meadows, New York 11365, was returned as "undeliverable."  See ECF No. 18.

At the default conference, which Defendants did not attend, see 10/30/2024 Minute Entry, the Court directed Plaintiffs to request a certificate of default and to commence motion practice for a default judgment motion.  See 11/1/2024 Order.  The Court mailed a copy of this Order to Defendants at DFL's business address and Mr. Chen's home address, warning Defendants against that "Defendants are on notice that a default judgment may require them to pay Plaintiffs tens of thousands of dollars in damages."  Id.

Plaintiffs requested a certificate of default.  See ECF Nos. 19-21.  The Clerk of Court entered a certificate of default against Defendants on November 25, 2024.  See ECF No. 23. Plaintiffs subsequently moved for a default judgment.  See ECF Nos. 28-31.  The District Court referred Plaintiffs' motion for default judgment to the undersigned for a report and recommendation.

## II.    LEGAL STANDARD FOR DEFAULT JUDGMENT

Federal Rule of Civil Procedure ("Rule") 55 "provides a two-step process for obtaining a default judgment."  Priestley v. Headminder, Inc., 647 F.3d 497, 504 (2d Cir. 2011).  In the first step, upon a showing, "by affidavit or otherwise," that the party against whom default judgment is sought "has failed to plead or otherwise defend" the action, then "the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  Once the clerk has entered a default, then, at the plaintiff's request, the clerk must enter default judgment if "the plaintiff's claim is for a sum certain or a sum that can be made certain by computation[.]"  Fed. R. Civ. P. 55(b)(1).  If the calculation of damages requires any level of discretion, the plaintiff may petition the court for a default judgment.  See Fed. R. Civ. P. 55(b)(2).

"The dispositions of motions for entries of defaults and default judgments . . . are left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993).  Nevertheless, a court may not enter default judgment "in a manner inconsistent with due process of law."  City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 132 (2d Cir. 2011) (citation omitted).  Once a defendant has defaulted, "a court is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor[.]"  Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (noting that the court must still independently determine "whether the [plaintiff's] allegations establish [the defendant's] liability as a matter of law").

Not every claim in a complaint will lead to an award of damages, even if the defendants have defaulted.  If a plaintiff raises a claim in a complaint but fails to mention it in the ensuing default judgment motion, a court may consider that claim abandoned.  See Jimenez v. Green Olive Inc., 744 F. Supp. 3d 221, 251-52 (E.D.N.Y. 2024) (considering a FLSA collective action certification request abandoned when the plaintiffs did not include the same request in their default judgment motion); Zabrodin v. Silk 222, Inc., 702 F. Supp. 3d 102, 121 (E.D.N.Y. 2023) (finding that the plaintiffs abandoned their claim for unlawful deductions and kickbacks in their complaint when they did "not elaborate on, or even mention, these deductions in their supporting memorandum or affidavits, nor [did] they appear to have included them in their damages computation").

Furthermore, "[w]hile a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages."  Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992).  The court must

inquire as to the proper damages award to a "reasonable certainty." Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999). A plaintiff's damages must "naturally flow from the injuries pleaded." Fermin v. Las Delicias Peruanas Restaurant, Inc., 93 F. Supp. 3d 19, 29 (E.D.N.Y. 2015) (quoting Greyhound, 973 F.2d at 159).

## III.    DISCUSSION

As a preliminary matter, the Court notes that Plaintiffs originally brought this action as a putative collective action. See Compl. ¶¶ 10, 112-14. In their motion, Plaintiffs do not seek a default judgment against Defendants on behalf of any unnamed members of a putative collective action or class. See Sojo Decl., ECF No. 29; Sojo Decl. Ex. I (calculating damages for Messrs. Gomez Cruz, Reynaldo Perez, Luna and Flores Godines only); Sojo Decl. Ex. K, ECF No. 29-11 (proposing that a default judgment be entered as to Messrs. Gomez Cruz, Reynaldo Perez, Luna and Flores Godines only); Pls.' Mem. L., ECF No. 30. The Court finds that Plaintiffs have abandoned their class and collective action claims. See Jimenez, 744 F. Supp. 3d at 251-52. As such, the Court will consider Plaintiffs' motion for default judgment only on behalf of Messrs. Gomez Cruz, Reynaldo Perez, Luna and Flores Godines.

### A.    Plaintiffs' Compliance With Procedural Rules

In evaluating a motion for default judgment, a court "should consider whether Plaintiffs have shown that Defendants had notice about the action and an opportunity to defend against it." Fermin, 93 F. Supp. 3d at 30. "[P]rocedural rules" governing default judgments "play a constructive role in maintaining the orderly and efficient administration of justice." Enron Oil, 10 F.3d at 96. Before default judgment can be granted, the Court must determine whether Plaintiffs complied with the Federal Rules of Civil Procedure, the Local Civil Rules of the

Southern and Eastern Districts of New York, and the Servicemembers Civil Relief Act ("SCRA").

### 1. Federal Rule Of Civil Procedure 4

Service of process of an individual and a corporate entity is valid under the Federal Rules of Civil Procedure if it complies with "state law for serving a summons in an action . . . in the state where the district court is located or where service is made[.]"  Fed. R. Civ. P. 4(e)(1) (service on an individual); Fed. R. Civ. P. 4(h)(1)(A) (service on a corporation, partnership or association).  As this action was commenced in the Eastern District of New York, service of process complies with the Federal Rules if it is permissible under New York law.

New York permits service of process on an individual by personally delivering the summons to

> a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend "personal and confidential" and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served, such delivery and mailing to be effected within twenty days of each other[.]

N.Y. C.P.L.R. § 308(2).  If an individual defendant cannot be personally served "with due diligence," New York Law permits service of process by "affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode within the state of the person to be served" and by mailing the summons in accordance with the same rules for personal service via a person of suitable age and discretion.  N.Y.C.P.L.R. § 308(4).  In New York, "attempting service on three different days at different times of day" is sufficient due diligence to permit "affix-and-mail" service.  Nesterov v. Kvadro S. Corp., No. 18 Civ. 7200 (MKB) (SJB),

2021 WL 1236029, at *2 (E.D.N.Y. Mar. 11, 2021), report & recommendation adopted, 2021

WL 1238707 (E.D.N.Y. Apr. 2, 2021).

> Service of process on a limited liability company can be completed by

> [p]ersonally delivering to and leaving with the secretary of state or his or her deputy, or with any person authorized by the secretary of state to receive such service, at the office of the department of state in the city of Albany, duplicate copies of such process together with the statutory fee, which fee shall be a taxable disbursement.

N.Y. Ltd. Liab. Co. L. § 303(a)(1).

The Court finds that Plaintiffs properly effectuated service of process on Mr. Chen.

Plaintiffs' process server stated in a sworn affidavit that on July 1, 2024, at 8:06 PM, July 2,

2024, at 7:07 AM and July 3, 2024, at 1:29 PM, he attempted to personally serve the summons

and complaint on Mr. Chen at his place of abode in Brooklyn, New York 11220. See ECF No. 8.

This location is the same address listed in the rider to request for summons attached to Plaintiffs'

complaint. See ECF No. 1-2. These three separate attempts, on different days and at different

times of day, are sufficient to constitute due diligence at personal service. See Nesterov, 2021

WL 1236029, at *2.

When Plaintiffs' process server could not personally serve Mr. Chen after three separate

attempts, he mailed the summons and complaint via first class mail "in an envelope marked

PERSONAL & CONFIDENTIAL' written on the same envelope and not indicating on the

outside that it is from an attorney or concerns an action against the person to be served." ECF

No. 8. As Mr. Chen was properly served via affix-and-mail in accordance with New York law,

he was properly served under Rule 4.

The Court also finds that Plaintiffs properly effectuated service of process on DFL.

Plaintiffs' process server personally delivered a copy of the summons and complaint to Nancy

Dougherty, an agent of the Secretary of State, at the Secretary's office in Albany.  See ECF No. 9.  Plaintiffs' process server affirmed that he knew that Ms. Dougherty was authorized to accept service on behalf of DFL.  See id.  As DFL was served in accordance with New York Limited Liability Company Law, it, too, was properly served under Rule 4.

Apart from the original service of process of the summons and complaint, the Court and Plaintiffs mailed the docket in this action, along with several scheduling Orders, status reports and accompanying documents, to Defendants at both DFL's business address and Mr. Chen's personal address.  See ECF No. 11-1; 9/30/2024 Order; 10/7/2024 Order; 11/1/2024 Order.  Even though two mailings to DFL's business address were returned as undeliverable, see ECF Nos. 18 & 26, Plaintiffs and the Court endeavored to have Defendants participate in this action.

### 2.    Local Civil Rule 55.2

In addition to effectuating proper service on under the Federal Rules, a movant for default judgment must also comply with the Local Civil Rules of the Southern and Eastern Districts of New York (the "Local Civil Rules").  Courts within this District require strict compliance with the Local Rules "[a]bsent special circumstances[.]"  Dacas v. Duhaney, No. 17 Civ. 3568 (EK) (VMS), 2023 WL 6297530, at *6 (E.D.N.Y. Sept. 8. 2023), report & recommendation adopted, 2023 WL 6294227 (E.D.N.Y. Sept. 27, 2023).  In many cases, "failure to comply with [Local Civil Rule 55.2] is a basis to deny a motion for default judgment."  Zabrodin, 702 F. Supp. 3d at 116.  Nevertheless, courts have excused a plaintiff's minor violations of Local Civil Rule 55.2 "where the defendant still receives sufficient notice and the noncompliance causes no prejudice[.]"  Id. at 117.

Under Local Civil Rule 55.2, the moving party in a default judgment motion must file

(1) an affidavit or declaration showing that: (A) the clerk has entered default under Local Civil Rule 55.1; (B) the party seeking default judgment has complied with

the Servicemembers Civil Relief Act, 50a U.S.C. § 521; and (C) the party against whom judgment is sought is not known to be a minor or an incompetent person, or, if seeking default judgment by the court, the minor or incompetent person is represented by a general guardian, conservator, or other fiduciary who has appeared.

Local Civ. R. 55.2(a). In order to comply with the SCRA, the plaintiff moving for default judgment must file an affidavit "stating whether or not the defendant is in military service and showing necessary facts to support the affidavit[.]" 50 U.S.C. § 3931(b)(1)(A). In order to affirm that a defendant was not in military service, the plaintiff must conduct an investigation both "after the commencement of an action or proceeding" and "after a default in appearance[.]" Jimenez, 744 F. Supp. 3d at 243 (citations omitted).

Apart from the affidavit, the moving party must file a notice of motion and supporting memorandum of law with exhibits, pursuant to Local Civil Rule 7.1, and a "proposed order detailing the proposed judgment to entered[.]" Local Civ. R. 55.2(a)(2). The moving party must also file a certificate of service stating that all required moving papers "have been personally served on, or mailed to the last known residence (for an individual defendant) or business address (for other defendants) of, the party against whom default judgment is sought." Local Civ. R. 55.2(a)(3).

If seeking discretionary damages, the moving party must "file a statement of damages, sworn or affirmed to by one or more people with personal knowledge . . . showing the proposed damages and the basis for each element of damages, including interest, attorney's fees, and costs." Local Civ. R. 55.2(c).

Here, the Court finds that the requirements of Local Civil Rule 55.2 are substantially met.

As to Local Civil Rule 55.2(a)(1), Plaintiffs' counsel submitted a declaration noting the Clerk of Court's entry of default against Defendants, with the certificates of default as an exhibit.

See Sojo Decl. ¶ 9; Sojo Decl. Ex. D, ECF No. 29-4.  This affidavit also states that Plaintiffs complied with the SCRA.  See Sojo Decl. ¶ 21.  Plaintiffs also individually stated declarations stating that Mr. Chen "is not a minor or incompetent person."  Gomez Cruz Decl. ¶ 6, ECF No. 29-5; Reynaldo Perez Decl. ¶ 6, ECF No. 29-6; Luna Decl. ¶ 6, ECF No. 29-7; Flores Godines Decl. ¶ 6, ECF No. 29-8.

The Court is also satisfied that Plaintiffs complied with the SCRA.  Plaintiffs have offered facts in their declarations to support a belief that Mr. Chen was not in military service prior to Defendants' default.  Gomez Cruz Decl. ¶ 5 (declaring that to Mr. Gomez Cruz's knowledge, Mr. Chen "is not in the active military service of the United States because [he] saw him regularly at the construction projects where [he] was employed"); Reynaldo Perez Decl. ¶ 5 (same), Luna Decl. ¶ 5 (same); Flores Godines Decl. ¶ 5 (same).  These declarations are included as part of Plaintiffs' motion papers in their default judgment motion.  After certificates of defaults were filed against Defendants, Plaintiffs filed an affidavit with a report from the Department of Defense Manpower Data Center that states that Mr. Chen was not in military service as of December 12, 2024.  See ECF No. 27.  Based on these filings, the Court finds that Plaintiffs have adequately investigated Mr. Chen's military status.

Plaintiffs also satisfied the remaining requirements of Local Civil Rule 55.2(a).  In compliance with Local Civil Rule 55.2(a)(2), Plaintiffs included, as part of their motion, a proposed default judgment order and a memorandum of law.  See Pls.' Mem. L.; Sojo Decl. Ex. K.  Plaintiffs' certificate of service states that "Plaintiffs' Notice of Motion for Default Judgment (Dkt. No. 28), the Declaration of Catalina Sojo in Support of Plaintiffs' Motion for Default Judgment, with Exhibits (Dkt. No. 29), and the Memorandum of Law in Support of Plaintiffs' Motion for Default Judgment (Dkt. No. 30)" were mailed via first-class mail to Mr. Chen's home

address and DFL's business address, in compliance with Local Civil Rule 55.2(a)(3).  ECF No. 31.

The Court respectfully recommends excusing Plaintiffs' technical noncompliance with Local Civil Rule 55.2(c).  Although the damages chart as part of Plaintiffs' motion does not state that it was "sworn or affirmed to by one or more people with personal knowledge," Local Civ. R. 55.2(c), Plaintiffs' counsel states in her declaration that the values in the damages chart are calculated in part based on Plaintiffs' declarations.  See Sojo Decl. ¶ 22.  Plaintiffs have personal knowledge of the hours they worked and the wages they earned.  See Gomez Cruz Decl. ¶ 1; Reynaldo Perez Decl. ¶ 1; Luna Decl. ¶ 1; Flores Godines Decl. ¶ 1.  Plaintiffs' counsel also explains in her declaration the methods that counsel used to calculated Plaintiffs' proposed damages, based on each cause of action in the complaint.  See Sojo Decl ¶¶ 22-25, 32-33.  The Court finds that these documents, which were mailed to Defendants, placed Defendants on notice of the claims for which they may be liable, and the damages they may owe.  See ECF No. 31.

Given that Plaintiffs' submissions show that Plaintiffs have complied with Rule 4 and that Plaintiffs have substantially complied with Local Civil Rule 55.2, the Court finds that Plaintiffs' default judgment motion is procedurally valid.

### B.    Factors Required For A Default Judgment

Once a court establishes that service on the defendants was proper, the "next question, before reaching liability or damages, is whether [a defendant's] conduct is sufficient to warrant entry of a default judgment."  Melo v. Milagro Grocery Corp., 750 F. Supp. 3d 38, 53 (E.D.N.Y. Sept. 26, 2024).  In order to determine whether default judgment is warranted, courts consider "(1) whether the default was willful; (2) whether ignoring the default would prejudice the opposing party; and (3) whether the defaulting party has presented a meritorious defense."  Fermin, 93 F. Supp. 3d at 30-31 (citing Swarna v. Al-Awadi, 622 F.3d 123, 142 (2d Cir. 2010)).

16

The Court finds that the first factor in evaluating default judgment is satisfied. A "defendant's failure to respond to the complaint is sufficient to demonstrate willfulness." Fermin, 93 F. Supp. 3d at 31 (collecting cases). Defendants have all "failed to plead or otherwise defend" this action. Fed. R. Civ. P. 55(a). DFL was served on June 24, 2024, meaning it was required to respond to the complaint on July 15, 2024. See Fed. R. Civ. P. 12(a)(1)(A)(i); ECF No. 9. As Mr. Chen was served on July 3, 2024, his deadline to answer or otherwise respond to the complaint was July 24, 2024. See Fed. R. Civ. P. 12(a)(1)(A)(i); ECF No. 8. When Defendants did not answer, the Court gave Defendants another opportunity to participate in this action by scheduling a conference. See 9/30/2024 Order. The Court mailed a notice of this conference to Defendants, with the warning that Defendants may be liable for a default judgment if they failed to participate in this action. See id. When Defendants failed to appear at this conference, the Court mailed another warning to Defendants that they "have not participated in this litigation despite numerous mailings having been sent by the Court to Defendants' addresses[,]" and that "a default judgment may require them to pay Plaintiffs tens of thousands of dollars in damages." 11/1/2024 Order. Defendants have had more than a year to respond to Plaintiffs' complaint, and they have failed to participate in this action and raise defenses to Plaintiffs' claims. Defendants' failure to participate in this action is deemed willful.

The Court also finds that the second requirement of a default judgment is satisfied. A plaintiff may suffer prejudice upon the denial of a default judgment motion if no other options are available for the plaintiff to obtain relief. See Fermin, 93 F. Supp. 3d at 31. Such is the case for Plaintiffs in this action. This action was originally filed on April 9, 2024, see generally ECF No. 1; since this action was filed over a year ago, Defendants have not answered or appeared to participate in this case. Plaintiffs and the Court have repeatedly endeavored to have Defendants

participate in this case, to no avail.  The Court finds that if default judgment is denied, Plaintiffs would not have other options to obtain relief from Defendants and would suffer prejudice accordingly.

Defendants cannot establish a meritorious defense in this action at this time.  When a defendant has not answered a complaint, the defendant has no defense, let alone a meritorious one.  See Fermin, 93 F. Supp. 3d at 31.  The Court already warned Defendants if they "do not participate in [this] lawsuit[], they would likely waive their right to raise factual or legal defenses that they may have to Plaintiffs' claims."  9/30/2024 Order.  Defendants failed to participate in this lawsuit, so they have no meritorious defenses.

The Court finds that all three factors necessary for a default judgment have been met for this case. Therefore, the Court will analyze whether Defendants are liable to Plaintiffs for violations of the FLSA and the NYLL based on the allegations in the complaint.

### C.    Liability

In order to determine whether a defendant in default is liable for a plaintiff's claims, a court "is required to accept all of the [plaintiff's] factual allegations as true . . . but is also required to determine whether the [plaintiff's] allegations establish [the defendant's] liability as a matter of law[.]"  Finkel, 577 F.3d at 84 (citations omitted).  The Court will examine whether, accepting Plaintiffs' well-pled allegations as true, Plaintiffs are protected under the FLSA and the NYLL, followed by whether Defendants are liable for wage-and-hour violations under the FLSA and the NYLL.

### 1.    Applicability Of The FLSA

In order to establish liability under the FLSA, a plaintiff must prove "(1) the defendant is an employer subject to [the] FLSA; (2) the plaintiff is an 'employee' within the meaning of [the]

FLSA; and (3) the employment relationship is not exempted from [the] FLSA."[4]  Payamps v. M&M Convenience Deli & Grocery Corp., No. 16 Civ. 4895 (LDH) (SJB), 2018 WL 3742696, at *4 (E.D.N.Y. May 18, 2018) (citation & internal ellipses omitted); see Isett v. Aetna Life Ins. Co., 947 F.3d 122, 127-28 (2d Cir. 2020); Zheng v. Liberty Apparel Co. Inc., 355 F.3d 61, 66 (2d Cir. 2003); Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999).  In addition, in order to qualify for the FLSA's overtime protections, a plaintiff must show either that the employees are "engaged in commerce[,]" or that the employer is an "enterprise engaged in commerce[.]"  Jacobs v. New York Foundling Hosp., 577 F.3d 93, 96-97 (2d Cir. 2009) (quoting 29 U.S.C. § 207(a)(1) (emphasis removed)); Sanchez v. Ms. Wine Shop Inc., 643 F. Supp. 3d 355, 366-67 (E.D.N.Y. 2022).

### a.    Statute Of Limitations

Although the FLSA statute of limitations is two years, the limitations period may be extended to three years for "a cause of action arising out of a willful violation[.]"  29 U.S.C. §255(a).  In a motion for default judgment, a court will apply the three-year statute of limitations if the plaintiff alleges that the defendant's conduct was willful.  See Dacas, 2023 WL 6297530, at *6.  In this action, the three-year FLSA limitations period applies.  Plaintiffs allege that Defendants' failures to pay Plaintiffs the minimum wage and overtime wages were willful. Compl. ¶¶ 120, 124, 129, 133.  Because Plaintiffs filed their complaint on April 9, 2024, the limitations period for Plaintiffs' FLSA claims extends to April 9, 2021.  See ECF No. 1.

The FLSA statute of limitations cuts off liability for some of Mr. Reynaldo Perez's and Mr. Luna's FLSA claims.  Mr. Reynaldo Perez started his employment in or around 2016,

---

[4] There are other forms of liability under the FLSA; this form is applicable in this case.  See, e.g., 29 U.S.C. §§ 201 et seq.

approximately five years before the beginning of the FLSA limitations period.  See Compl. ¶ 51.

Mr. Luna started his employment in or around 2013, approximately eight years before the

beginning of the FLSA limitations period.  See Compl. ¶ 68.  Only Mr. Reynaldo Perez's and

Mr. Luna's FLSA claims for conduct beginning April 9, 2021, may be considered timely.  In

contrast, Mr. Gomez Cruz began working for Defendants in around September 2021 and Mr.

Flores Godines began working for Defendants in around August 2023, making all of their claims

timely under the FLSA.  See id. ¶ 36, 83.

Therefore, the Court respectfully recommends that Plaintiffs' motion for default

judgment on Plaintiffs' FLSA claims be denied as to any violations that took place prior to April

9, 2021.

### b.    Defendants' Engagement In Interstate Commerce

The FLSA limits the scope of its wage-and-hour protections to plaintiffs who are engaged

in interstate commerce.  See, e.g., Jacobs, 577 F.3d at 96 (citing 29 U.S.C. § 207(a)(1)); Cabrera

v. Canela, 412 F. Supp. 3d 167, 178 (E.D.N.Y. 2019).  A plaintiff may satisfy the "engaged in

commerce" requirement of the FLSA by establishing either that the plaintiff employee

"personally engaged in interstate commerce or in the production of goods for interstate

commerce[,]" or that the defendant employer was "an enterprise engaged in interstate commerce

or in the production of goods for interstate commerce[.]"  Rodriguez v. Almighty Cleaning, Inc.,

784 F. Supp. 2d 114, 120 (E.D.N.Y. 2011).  These types of coverage are respectively known as

"individual coverage" and "enterprise coverage."  See id.  As is relevant in this case, the FLSA

defines an "enterprise engaged in commerce or in the production of goods for commerce" as a

business that, inter alia, "has employees engaged in commerce or in the production of goods for

commerce, or that has employees handling, selling, or otherwise working on goods or materials

that have been moved in or produced for commerce by any person[,]" and has an "annual gross volume of sales made or business done [of] not less than $500,000."  29 U.S.C. § 203(s)(1)(A).

On a motion for default judgment, a plaintiff's otherwise conclusory allegations in the complaint may establish enterprise FLSA coverage if "it may be inferred from the type of business enterprise that it was engaged in interstate commerce."  Cabrera, 412 F. Supp. 3d at 179-80 (collecting cases).  A court may infer that enterprise coverage exists for a construction business, as it is "a type that is typically involved in interstate commerce."  Remache v. Mac Hudson Grp., No. 14 Civ. 3118 (AMD) (RML), 2018 WL 4573072, at *4 (E.D.N.Y. Sept. 7, 2018), report & recommendation adopted, 2018 WL 4568860 (E.D.N.Y. Sept. 24, 2018); see Tzilin v. Jimmy G Construction Corp., No. 23 Civ. 4047 (ENV) (MMH), 2024 WL 4309775, at *6 (E.D.N.Y. Sept. 26, 2024) (collecting cases inferring that a construction business is engaged in interstate commerce, even with otherwise conclusory allegations regarding commerce in the complaint).

Here, the Court finds that Defendants are an enterprise engaged in commerce.  Plaintiffs allege that Defendants "had a gross annual volume of sales of not less than $500,000[.]"  Compl. ¶ 32.  Plaintiffs also allege that "numerous items that were used in the construction corporation on a daily basis are goods produced outside of the state of New York."  Id. ¶ 33.  Plaintiffs also allege that they individually handled "construction materials and other supplies produced outside the State of New York."  Id. ¶¶ 38, 53, 70, 85.  Based on these allegations, it is logical to infer that at least some of the construction materials used as part of Plaintiffs' jobs came from outside New York State.  As such, for the purposes of this motion, the Court finds that Defendants are collectively an "enterprise engaged in interstate commerce[,]" subject to the FLSA.  Rodriguez, 784 F. Supp. 2d at 120.

### c.    Defendants' Status As Employers

Under the FLSA, the definition of "employer" is liberally construed beyond common law principles of agency.  See Irizarry v. Catsimatidis, 722 F.3d 99, 103 (2d Cir. 2013).  The Second Circuit looks to the "economic reality" of the relationship between the plaintiff and the defendant, based on the totality of the circumstances.  Id. at 104.  In order to determine the status of a putative employer, courts examine "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  Barfield v. New York City Health & Hosps. Corp., 537 F.3d 132, 142 (2d Cir. 2008) (quoting Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984)).  The lack of one factor "is not fatal" to a plaintiff's claims, as the economic-reality test is based on the totality of the circumstances.  Fermin, 93 F. Supp. 3d at 36.

An individual defendant may also be an "employer" for the purposes of the FLSA if the individual exercised "operational control" over the defendant company "was engaged in the culpable company's affairs to a degree that it is logical to find him liable to the plaintiff employees[.]"  Irizarry, 722 F.3d at 106, 117 (affirming the liability of an individual defendant based on his "active exercise of overall control over the company, his ultimate responsibility for the plaintiffs' wages, his supervision of managerial employees" and his "almost daily" visits to some of his grocery stores).  In order to determine whether an individual defendant is an "employer" under the FLSA, courts use the same "economic reality" test as is used for a corporate defendant.  See Fermin, 93 F. Supp. 3d at 35.

The FLSA allows more than one entity or person to be considered an "employer" at once.  See Zheng, 355 F.3d at 66.  Multiple defendants may be "employers" under the FLSA if they each exhibit "formal and functional control" over a plaintiff's employment.  Barfield, 537 F.3d at

148.  The economic-reality test for determining one defendant's status as an employer under the FLSA also establishes whether multiple defendants are joint employers.  See Zheng, 355 F.3d at 71; Reyes-Fana v. Moca Grocery NY Corp., No. 21 Civ. 4493 (AMD) (RER), 2022 WL 5428688, at *6 (E.D.N.Y. Aug. 16, 2022), report & recommendation adopted, 2022 WL 4094241 (E.D.N.Y. Sept. 7, 2022).  Joint employers are jointly and severally liable for either employer's violations of the FLSA.  See Echevarria v. ABC Corp., No. 21 Civ. 4959 (JS) (ARL), 2023 WL 5880417, at *5 (E.D.N.Y. Sept. 11, 2023), adhered to on reconsideration, 2024 WL 1639934 (E.D.N.Y. Apr. 16, 2024).

Here, the Court finds that Mr. Chen and DFL are joint employers under the FLSA.  Mr. Chen was an owner of DFL at all relevant points in this action.  See Compl. ¶¶ 3, 23, 25.  Mr. Chen and DFL had the power to hire and fire Plaintiffs.  See id. ¶¶ 23, 31.  Mr. Chen and DFL controlled the terms and conditions of Plaintiffs' employment, including the rates and methods of Plaintiffs' compensation.  See id. ¶¶ 23, 26, 27, 31.  Mr. Chen also kept employee records for DFL, although he did not do so accurately or completely.  See id. ¶¶ 12, 103.  Considering the totality of the circumstances, including Mr. Chen's alleged control over the terms, conditions and compensation of Plaintiffs' employment, Plaintiffs have sufficiently established that Mr. Chen and DFL are both employers under the FLSA.  As such, they may both be held jointly and severally liable for Plaintiffs' claims.

### d.    Plaintiffs' Status As Employees

Generally, if a defendant is a covered employer in an action alleging violations of the FLSA, the plaintiff is a covered employee.  With certain exceptions, the FLSA defines an "employee" as "any individual employed by an employer."  29 U.S.C. § 203(e)(1).  In order to determine whether an individual is an employee under the FLSA, courts in the Second Circuit

apply the same "economic reality" test as the FLSA's "employer" analysis.  See Irizarry, 722 F.3d at 104.

Here, the Court has already found that Defendants may be held jointly and severally liable as employers under the FLSA.  See, supra, Part III.C.1.c.  Plaintiffs, as construction workers, do not fall under any exceptions to the FLSA's definition of "employee."  See 29 U.S.C. § 203(e); Compl. ¶¶ 4, 34, 37, 52, 69, 84.  The Court finds that Plaintiffs are all "employees" as defined by the FLSA.

### e.    Applicability Of FLSA Exemptions

Even if either an employer or employee is engaged in commerce, Plaintiffs may not recover under the FLSA if they fall within the FLSA's "litany of exemptions."  Fermin, 93 F. Supp. 3d at 32 (citations omitted).  The "burden rests on the employer to prove that a particular employee is exempt from the [FLSA's] requirements."  Harvey v. Homebound Mortgage, Inc., 547 F.3d 158, 163 (2d Cir. 2008).  A defendant in default "fail[s] to sufficiently invoke any exemptions."  Cao v. Wedding in Paris LLC, 727 F. Supp. 3d 239, 275 (E.D.N.Y. 2024).  On a motion for default judgment, therefore, a court may find that litigants are not exempt employees if they "do not allege any facts that would make them exempt under the FLSA or NYLL."  Id.

Here, the Court finds that there are no exemptions that apply to Plaintiffs.  As the Court already discussed, see, supra, Part III.C.1.d., Plaintiffs worked for Defendants as construction workers.  A "laborer in the construction field" is not exempt from the FLSA.  Echevarria, 2023 WL 5880417, at *4; see Remache, 2018 WL 4573072, at *4.  Moreover, because Defendants have defaulted in this action, "they have failed to sufficiently invoke any [FLSA] exemptions."  Jimenez, 744 F. Supp. 3d at 247.  As such, the Court finds that Plaintiffs are covered employees under the FLSA.

## 2.    Applicability Of The NYLL

"[In order to] plead a NYLL claim, [a plaintiff] must establish that [the] employment relationship with Defendants falls within the NYLL, which applies to any person employed for hire by an employer in any employment." Solis v. Tropical Restaurant Bar Inc., No. 23 Civ. 1707 (ENV) (MMH), 2024 WL 4271234, at *8 (E.D.N.Y. Sept. 19, 2024) (citations & quotation marks omitted).

### a.    Statute Of Limitations

The statute of limitations for NYLL claims is six years. See N.Y. Lab. L. §§ 198(3), 663(3). Because this action was filed on April 9, 2024, the presumptive limitations period for Plaintiffs' NYLL claims began April 9, 2018. See generally ECF No. 1.

New York's response to the Covid-19 pandemic extended the limitations period for Plaintiffs' NYLL claims. New York Executive Order 202.8, signed March 20, 2020, tolled "any specific time limit for the commencement, filing, or service of any legal action . . . as prescribed by the procedural laws of this state[.]" N.Y. Exec. Order 202.8. This tolling period was extended several times, through several subsequent executive orders, until it ended on November 3, 2020. See N.Y. Exec. Order 202.67. Although this tolling period does not affect any limitations periods for federal statutes, see Romero v. Manhattan & Bronx Surface Transit Operating Auth., No. 21 Civ. 491 (LJL), 2022 WL 624451, at *5-6 (S.D.N.Y. Mar. 2, 2022), courts have interpreted these executive orders as a toll, rather than a suspension, of statutes of limitations for New York laws. See Powell v. Scollard, No. 21 Civ. 1477 (VSB), 2023 WL 5975249, at *3-4 (S.D.N.Y. Sept. 14, 2023); McLaughlin v. Snowlift, Inc., 185 N.Y.S.3d 212, 213-14 (2d Dep't 2023). As such, the statute of limitations on the NYLL was tolled from March

20, 2020, to November 3, 2020, or 228 days.  Taking this tolling period into effect, the

limitations period for Plaintiffs' NYLL claims began August 24, 2017. [5]

Messrs. Gomez Cruz and Flores Godines started working for Defendants in or around

October 2018, and August 1, 2023, respectively.  See Compl. ¶¶ 36, 83.  These dates, even

approximated, are within the NYLL's limitations period.  As such, Messrs. Gomez Cruz's and

Flores Godines's claims for their entire employment periods are timely under the NYLL.

Even with the Covid-19 tolling provisions, the statute of limitations still cuts off liability

for some NYLL claims for Messrs. Reynaldo Perez and Luna.  Mr. Reynaldo Perez began

working for Defendants in or around 2016 and 2013, respectively, years before the limitations

period under the NYLL begins.  See id. ¶¶ 51, 68.  As such, any of Mr. Reynaldo Perez's or Mr.

Luna's claims based on conduct occurring before August 24, 2017, would be untimely.

Therefore, the Court respectfully recommends that Plaintiffs' motion for default judgment be

denied as to Mr. Reynaldo Perez's and Mr. Luna's NYLL claims that occurred before August 24,

2017.

b.    **Substantive Coverage Requirements**

Coverage for an employee under the NYLL is more expansive than it is under the FLSA.

In order to establish liability under the NYLL, a plaintiff must "prove that he was an employee

and that [the defendants] were employer[s] as defined by the statue and accompanying

regulations."  Sanchez, 643 F. Supp. 3d at 368-69 (quoting Ethelberth v. Choice Sec. Co., 91 F.

Supp. 3d 339, 360 (E.D.N.Y. 2015)).  Unlike the FLSA, the NYLL does not have a minimum

revenue requirement or necessitate participation in interstate commerce.  See Burns v. Scott, 635

F. Supp. 3d 258, 274 (S.D.N.Y. 2022).

---

[5] April 9, 2018 – 228 = August 24, 2017.

Generally, a plaintiff who falls under the FLSA's umbrella will enjoy the NYLL's protections as well.  Although the Second Circuit has not definitively ruled on whether the NYLL and the FLSA apply the same tests for an employer or a joint employer, see Irizarry, 722 F.3d at 117; Perez Perez v. Escobar Construction, Inc., No. 23-1240-cv, 2024 WL 3594325, at *2 n.3 (2d Cir. July 31, 2024) (summary order), the Second Circuit "construe[s] the NYLL definition [of an employee] as the same in substance as the definition in the FLSA."  Velarde v. GW GJ, Inc., 914 F.3d 779, 783 (2d Cir. 2019) (quoting Glatt v. Fox Searchlight Pictures, Inc., 811 F.3d 528, 534 (2d Cir. 2016)).  District courts in the Second Circuit have held that the "NYLL's definition of [an] employer is . . . nearly identical to that of the FLSA, and the analysis of the employment relationship is based on the same factors."  Cao, 727 F. Supp. 3d at 275 (citations & quotation marks omitted); see Zabrodin, 702 F. Supp. 3d at 117.  In order to determine joint and several liability for multiple defendants, courts apply the same standard to FLSA and NYLL claims.  See Echevarria, 2023 WL 5880417, at *5; Khan v. Nyrene, Inc., No. 18 Civ. 557 (ARR) (ST), 2020 WL 1931282, at *5 (E.D.N.Y. Mar. 11, 2020), report & recommendation adopted, 2020 WL 1929066 (E.D.N.Y. Apr. 21, 2020); Fermin, 93 F. Supp. 3d at 37.  "Generally, where liability is found under the FLSA, it is also found under the NYLL."  Palaghita v. Alkor Capital Corp., No. 19 Civ. 154 (ARR) (RER), 2021 WL 4464121, at *8 (E.D.N.Y. Aug. 20, 2021), report & recommendation adopted, 2021 WL 4463483 (E.D.N.Y. Sept. 29, 2021).

Here, the Court has already established that Defendants were jointly and severally liable as employers under the FLSA, and that Plaintiffs were non-exempt employees.  See, supra, Part III.C.1.  For these same reasons, Plaintiffs are employees, and Defendants are employers, under

the NYLL.  Within the applicable limitations period, Plaintiffs are entitled to the NYLL's protections.

### 3.    Defendants' Wage-and-hour Violations

Because the FLSA limitations period falls within the NYLL limitations period, and because a covered employee under the FLSA is also protected by the NYLL, there is significant overlap in liability among the FLSA and the NYLL.  Where there is overlap, the Court will examine Defendants' potential liability under the FLSA and the NYLL together.  In making these assessments, the Court relies on the complaint, which is based on Plaintiffs' recollections.

### a.    Overtime Violations

The FLSA requires an employee to "be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week[.]" Nakahata v. New York-Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 200 (2d Cir. 2013); see 29 U.S.C. § 207(a).  New York regulations also generally require employers to "pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in and subject to the exemptions of" the FLSA.  N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.2.  With certain exceptions, the NYLL characterizes a "legal day's work" as eight hours.  N.Y. Lab. L. § 160.  In order to establish "a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours."  Lundy v. Catholic Health Sys. of Long Island, Inc., 711 F.3d 106, 114 (2d Cir. 2013); see Fermin, 93 F. Supp. 3d at 44 (noting that the pleading requirements for an overtime claim "appl[y] in the context of the NYLL as well").  Under the NYLL, similar calculations are to be made.  "Absent statutory exceptions, a flat sum compensation generally violates the overtime requirements of the FLSA and the NYLL when an

employee works in excess of 40 hours per week without additional hourly compensation." Sanchez, 643 F. Supp. 3d at 370.

On a motion for default judgment, the bar to establish a plaintiff's hours worked is low. When a defendant has defaulted, "the court may presume that the plaintiff's recollection and estimates of the hours he worked are accurate."  Jimenez, 744 F. Supp. 3d at 249 (noting that "it would be unfair to require more substantial proof of improper compensation when the defendant is not participating in the case and the plaintiff lacks the ability to obtain the defendant's employment records through discovery").   Nevertheless, a plaintiff must "provide sufficient detail about the length and frequency of [the] unpaid work to support a reasonable inference that [the plaintiff] worked more than forty hours in a given week." Nakahata, 723 F.3d at 201.

The Court will assess whether Defendants are liable for unpaid overtime premiums for Messrs. Gomez Cruz, Reynaldo Perez, Luna and Flores Godines, respectively.

### i.    Mr. Gomez Cruz

Throughout Mr. Gomez Cruz's employment with Defendants, Mr. Gomez Cruz worked approximately 50 hours per week.  See Compl. ¶ 41.  Mr. Gomez Cruz was paid in cash at a flat daily rate, regardless of how many hours he worked.  See id. ¶¶ 42-44.  Mr. Gomez Cruz therefore did not receive any overtime premiums for hours worked in excess of 40 hours per week.  See id. ¶¶ 43-44.  As such, the Court respectfully recommends that Defendants be found liable to Mr. Gomez Cruz for overtime violations under the FLSA and the NYLL.

### ii.    Mr. Reynaldo Perez

Although the limitations period for Mr. Reynaldo Perez's NYLL claims begins August 24, 2017, see, supra, Part III.C.2.a., the complaint does not offer any information as to the hours that Mr. Reynaldo Perez worked prior to 2018.  See Compl. ¶ 56.  As such, the Court

respectfully recommends that Plaintiffs' motion for default judgment be denied as to Mr. Reynaldo Perez's FLSA and NYLL overtime claims that occurred before January 1, 2018.

From 2018 until the end of Mr. Reynaldo Perez's employment with Defendants, Mr. Reynaldo Perez worked approximately 50 hours per week. See id. Mr. Reynaldo Perez was paid in cash at a flat daily rate, regardless of how many hours he worked. See id. ¶¶ 57-61. Mr. Reynaldo Perez therefore did not receive any overtime premiums for hours worked in excess of 40 hours per week. See id. ¶¶ 58-61. As such, the Court respectfully recommends that Defendants be found liable to Mr. Reynaldo Perez for overtime violations under the FLSA and the NYLL.

### iii.    Mr. Luna

Just as with Mr. Reynaldo Perez, the complaint limits the time period of potential liability for Mr. Luna's overtime claims. Although the limitations period for Mr. Luna's NYLL claims begins August 24, 2017, see, supra, Part III.C.2.a., the complaint does not offer any information as to the hours that Mr. Luna worked prior to April 2018. See Compl. ¶ 73. As such, the Court respectfully recommends that Plaintiffs' motion for default judgment be denied as to Mr. Luna's FLSA and NYLL overtime claims that occurred before April 1, 2018.

Also as with Mr. Reynaldo Perez, from 2018 until the end of Mr. Luna's employment with Defendants, Mr. Luna worked "typically 50 hours per week[.]"[6] Id. Mr. Luna was also paid in cash at a flat daily rate, regardless of how many hours he worked. See id. ¶¶ 74-76. Mr. Luna therefore did not receive any overtime premiums for hours worked in excess of 40 hours

---

[6] As previously noted, see Note 2, this allegation appears to be inconsistent with Mr. Luna's allegations that he worked from 7:00 AM to 5:30 PM, five days per week, without any breaks. See Compl. ¶¶ 73, 77. Nevertheless, the Court will accept Mr. Luna's allegation that he worked fifty hours per week as true for the purposes of this motion.

per week.  See id. ¶¶ 75-76.  As such, the Court respectfully recommends that Defendants be found liable to Mr. Luna for overtime violations under the FLSA and the NYLL.

### iv.    Mr. Flores Godines

Mr. Flores Godines also regularly worked over forty hours per week.  Throughout Mr. Flores Godines's employment with Defendants, Mr. Flores Godines worked approximately fifty hours per week, and worked sixty hours per week for two weeks.  See id. ¶¶ 88-89.  Mr. Flores Godines was also paid in cash at a flat daily rate, regardless of how many hours he worked.  See id. ¶¶ 90-91.  Mr. Flores Godines therefore did not receive any overtime premiums for hours worked in excess of 40 hours per week.  See id. ¶ 90.  As such, the Court respectfully recommends that Defendants be found liable to Mr. Flores Godines for overtime violations under the FLSA and the NYLL.

### b.    Minimum-wage Violations

The FLSA and the NYLL each set minimum hourly wages for each covered employee. See 29 U.S.C. § 206; N.Y. Lab. L. § 652.  The federal minimum wage under the FLSA was $7.25 per hour for all relevant times.  See 29 U.S.C. § 206(a)(1)(C).  Compliance with the FLSA's minimum wage provision does not "excuse noncompliance" with a state's minimum wage law, if the state's minimum wage is higher.  29 U.S.C. § 218(a).

The minimum wage under the NYLL during the relevant limitations period differs based on the employer's the number of employees.  Within the relevant limitations period, in New York City, minimum wages under the NYLL were higher for "[l]arge employers" (defined as employers "of eleven or more employees") than for "[s]mall employers" (defined as employers of "ten or less employees").  N.Y. Lab. L. § 652(1)(a).  Courts have reached different conclusions regarding whether to apply the minimum wage for large employers or for small

employers "where plaintiffs do not allege the number of employees the defaulting defendant employed."  Sevilla v. House of Salads One LLC, No. 20 Civ. 6072 (PKC) (CLP), 2022 WL 954740, at *8 n.11 (E.D.N.Y. Mar. 30, 2022) (collecting cases).

Because DFL was located in New York City, for the relevant NYLL limitations period, the applicable minimum wage differed year-by-year depending on whether DFL may be considered a large employer or a small employer.  See N.Y. Lab. L. § 652(1)(a) (basing the minimum wage on "each hour worked in the City of New York"); Compl. ¶¶ 2, 4.  The relevant minimum wages are reflected in the table below.

| Minimum Wage Effective Date | NYLL Minimum Wage (Large Employers) | NYLL Minimum Wage (Small Employers) |
|---|---|---|
| 12/31/2017 | $13.00 | $12.00 |
| 12/31/2018 | $15.00 | $13.50 |
| 12/31/2019 | $15.00 | $15.00 |
| 12/31/2020 | $15.00 | $15.00 |
| 12/31/2021 | $15.00 | $15.00 |
| 12/31/2022 | $15.00 | $15.00 |

See N.Y. Lab. L. §§ 652(1)(a).

Here, the Court notes that Plaintiffs have not provided any information as the number of employees at DFL.  See generally Compl.  As Defendants must be on notice of the possible damages, which here are dependent on the number of employees, the Court will apply the minimum wage for small employers, which is lower, to Plaintiffs' claims.

As Plaintiffs were compensated at a flat daily sum, the Court must calculate Plaintiffs' hourly wages based on their daily wages.  Under both the FLSA and the NYLL, an employee's hourly wage is calculated by dividing the weekly compensation by the number of hours the

employee worked.  See 29 C.F.R. § 778.109[7] ("The regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid."); N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.16[8] ("When an employee is paid on a piece work basis, salary, or any basis other than hourly rate, the regular hourly wage rate shall be determined by dividing the total hours worked during the week into the employee's total earnings."); Fermin, 93 F. Supp. 3d at 42.

Pursuant to both state and federal regulations, in order to determine Plaintiffs' hourly rate of pay, the Court will divide Plaintiffs' weekly compensation by the hours Plaintiffs alleged they worked per week in the complaint.  Using this calculation, the Court here will consider whether Defendants are liable to Messrs. Gomez Cruz, Reynaldo Perez, Luna and Flores Godines, respectively, during the limitations period for minimum-wage violations.

### i.    Mr. Gomez Cruz

The Court has calculated the following hourly rates for Mr. Gomez Cruz's employment, compared to the locally applicable NYLL and FLSA minimum wages, in the table below.  Given that Mr. Gomez Cruz worked five days per week, the Court will calculate Mr. Gomez Cruz's weekly rate by multiplying his daily rate(s) by five.  See Compl. ¶ 41.

---

[7] Although this calculation is typically used to calculate hourly rates for determining overtime damages, courts in this District have applied this regulation for calculating hourly rates for minimum-wage claims as well.  See Cao, 727 F. Supp. 3d at 277; Sanchez, 643 F. Supp. 3d at 375.

[8] New York's Hospitality Industry Wage Order uses a different method of calculating an hourly rate for employees employed in the hospitality industry.  See N.Y. Comp. Codes R. & Regs. tit. 12 § 146-3.5.  This Order does not apply to Plaintiffs, who worked as construction laborers.  See N.Y. Comp. Codes R. & Regs. tit. 12 § 146-3.1.

| Time Period Beginning | FLSA Minimum Wage | NYLL Minimum Wage (Small Employers) | Daily Rate | Weekly Rate | Hours Worked Per Week | Hourly Rate |
|---|---|---|---|---|---|---|
| 9/1/2021 | $7.25 | $15.00 | $170.00 | $850.00 | 50 | $17.00 |
| 12/31/2021 | $7.25 | $15.00 | $170.00 | $850.00 | 50 | $17.00 |
| 9/1/2022 | $7.25 | $15.00 | $180.00 | $900.00 | 50 | $18.00 |
| 12/31/2022 | $7.25 | $15.00 | $180.00 | $900.00 | 50 | $18.00 |

See id. ¶¶ 41, 43-44.  Throughout Mr. Gomez Cruz's employment with Defendants, Mr. Gomez Cruz's hourly rates were above both the federal and New York minimum wages.  See 29 U.S.C. § 206(a)(1)(C); N.Y. Lab. L. § 652(1)(a)(ii).  As such, the Court respectfully recommends that Defendants not be found liable to Mr. Gomez Cruz for minimum-wage violations under the NYLL and the FLSA.

### ii.    Mr. Reynaldo Perez

Although the limitations period for Mr. Reynaldo Perez's NYLL claims begins August 24, 2017, see, supra, Part III.C.2.a., the complaint does not offer any information as to Mr. Reynaldo Perez's wages prior to 2018.  See Compl. ¶¶ 58-61.  As such, the Court respectfully recommends that Plaintiffs' motion for default judgment be denied as to Mr. Reynaldo Perez's FLSA and NYLL overtime claims that occurred before January 1, 2018.

The Court has calculated the following hourly rates for Mr. Reynaldo Perez's employment beginning in 2018, compared to the locally applicable NYLL and FLSA minimum wages, in the table below.  Given that Mr. Reynaldo Perez worked five days per week, the Court will calculate Mr. Reynaldo Perez's weekly rate by multiplying his daily rate(s) by five.  See id. ¶ 56.

| Time Period Beginning | FLSA Minimum Wage | NYLL Minimum Wage (Small Employers) | Daily Rate | Weekly Rate | Hours Worked Per Week | Hourly Rate |
|---|---|---|---|---|---|---|
| 1/1/2018 | $7.25 | $12.00 | $140.00 | $700.00 | 50 | $14.00 |
| 12/31/2018 | $7.25 | $13.50 | $140.00 | $700.00 | 50 | $14.00 |
| 12/31/2019 | $7.25 | $15.00 | $140.00 | $700.00 | 50 | $14.00 |
| 12/31/2020 | $7.25 | $15.00 | $140.00 | $700.00 | 50 | $14.00 |
| 1/1/2021 | $7.25 | $15.00 | $150.00 | $750.00 | 50 | $15.00 |
| 12/31/2021 | $7.25 | $15.00 | $150.00 | $750.00 | 50 | $15.00 |
| 12/1/2022 | $7.25 | $15.00 | $160.00 | $800.00 | 50 | $16.00 |
| 12/31/2022 | $7.25 | $15.00 | $160.00 | $800.00 | 50 | $16.00 |
| 5/1/2023 | $7.25 | $15.00 | $170.00 | $850.00 | 50 | $17.00 |

See id. ¶¶ 56, 58-61.  Throughout Mr. Reynaldo Perez's employment with Defendants, Mr. Reynaldo Perez's hourly rates were above the federal minimum wage.  See 29 U.S.C. § 206(a)(1)(C).  As such, the Court respectfully recommends that Defendants not be found liable to Mr. Reynaldo Perez for minimum-wage violations under the FLSA.

As to the New York minimum wage, Mr. Reynaldo Perez earned below the minimum below the minimum wage for small employers in 2020.  See N.Y. Lab. L. § 652(1)(a)(ii).  Mr. Reynaldo Perez earned at or above the minimum wage during all other relevant times.  See id. Because Mr. Reynaldo Perez earned below the New York minimum wage at some point during his employment with Defendants from December 31, 2019, to December 31, 2020, see N.Y. Lab. L. § 652(1)(a)(ii), the Court respectfully recommends that Defendants be found liable to Mr.

Reynaldo Perez for minimum-wage violations under the NYLL from December 31, 2019, to December 31, 2020.[9]

### iii.    Mr. Luna

Although the limitations period for Mr. Luna's NYLL claims begins August 24, 2017, see, supra, Part III.C.2.a., the complaint does not offer any information as to Luna's hours worked prior to April 2018.  See Compl. ¶¶ 73, 75-76.  As such, the Court respectfully recommends that Plaintiffs' motion for default judgment be denied as to Mr. Luna's FLSA and NYLL overtime claims that occurred before April 1, 2018.

The Court has calculated the following hourly rates for Mr. Luna's employment beginning in 2018, compared to the locally applicable NYLL and FLSA minimum wages, in the table below.  Given that Mr. Luna worked five days per week, the Court will calculate Mr. Luna's weekly rate by multiplying his daily rate(s) by five.  See id. ¶ 73.

| Time Period Beginning | FLSA Minimum Wage | NYLL Minimum Wage (Small Employers) | Daily Rate | Weekly Rate | Hours Worked Per Week | Hourly Rate |
|---|---|---|---|---|---|---|
| 4/1/2018 | $7.25 | $12.00 | $150.00 | $750.00 | 50 | $15.00 |
| 12/31/2018 | $7.25 | $13.50 | $150.00 | $750.00 | 50 | $15.00 |
| 12/31/2019 | $7.25 | $15.00 | $150.00 | $750.00 | 50 | $15.00 |
| 1/1/2020 | $7.25 | $15.00 | $190.00 | $950.00 | 50 | $19.00 |
| 12/31/2020 | $7.25 | $15.00 | $190.00 | $950.00 | 50 | $19.00 |
| 12/31/2021 | $7.25 | $15.00 | $190.00 | $950.00 | 50 | $19.00 |
| 12/31/2022 | $7.25 | $15.00 | $190.00 | $950.00 | 50 | $19.00 |

See id. ¶¶ 73, 75-76.  Throughout Mr. Luna's employment with Defendants, Mr. Luna's hourly rates were above both the federal and New York minimum wages.  See 29 U.S.C. § 206(a)(1)(C); N.Y. Lab. L. § 652(1)(a)(ii).  As such, the Court respectfully recommends that

---

[9] Mr. Reynaldo Perez alleges that he earned $140 per day until "on or about 2020" and that beginning "approximately 2021[,]" he began earning $150 per day.  See Compl. ¶¶ 58-59.  The Court construes this allegation to mean that Mr. Reynaldo Perez's last day earning $140 per day was December 31, 2020, and that he began earning $150 per day beginning January 1, 2021.

Defendants not be found liable to Mr. Luna for minimum-wage violations under the NYLL and the FLSA.

### iv.    Mr. Flores Godines

The Court has calculated the following hourly rates for Mr. Flores Godines's employment, compared to the locally applicable NYLL and FLSA minimum wages, in the table below.  Given that Mr. Flores Godines worked five days per week for most weeks, the Court will calculate Mr. Flores Godines's weekly rate by multiplying his daily rate by five.  See Compl. ¶ 88.  Given that Mr. Flores Godines also worked six days and sixty hours per week for two weeks, the Court will also calculate Mr. Flores Godines's weekly rate by multiplying his daily rate by six for two weeks.  See id. ¶ 89.

| Time Period Beginning | FLSA Minimum Wage | NYLL Minimum Wage (Small Employers) | Daily Rate | Weekly Rate | Hours Worked Per Week | Hourly Rate |
|---|---|---|---|---|---|---|
| 8/1/2023 (five days per week) | $7.25 | $15.00 | $170.00 | $850.00 | 50 | $17.00 |
| 8/1/2023 (six days per week) | $7.25 | $15.00 | $170.00 | $1,020.00 | 60 | $17.00 |

See id. ¶¶ 88-89, 91.  Throughout Mr. Flores Godines's employment with Defendants, Mr. Flores Godines's hourly rates were above both the federal and New York minimum wages.  See 29 U.S.C. § 206(a)(1)(C); N.Y. Lab. L. § 652(1)(a)(ii).  As such, the Court respectfully recommends that Defendants not be found liable to Mr. Flores Godines for minimum-wage violations under the NYLL and the FLSA.

### c.    Failure To Provide Wages Notices And Wage Statements

The NYLL requires each employer to "provide his or her employees . . . at the time of hiring, a notice containing" information about, inter alia, the employee's wages, including the

rate of pay, allowances claimed, the employer's name and aliases, and the employee's regular pay day.  N.Y. Lab. L. § 195(1)(a).  Once the employee is hired, the employer must provide a wage statement "with every payment of wages," listing, inter alia, the name of the employer, the rate of pay, gross wages, applicable deductions and allowances, and net wages.  N.Y. Lab. L. § 195(3).  The NYLL provides for statutory damages for violations of this law.  See N.Y. Lab. L. §§ 198(1-b), 198(1-d).

An employer's failure to pay wage notices does not automatically entitle the employee to statutory damages.  A federal court does not have jurisdiction to hear a claim in which the plaintiff lacks standing to sue.  See Spokeo, Inc. v. Robins, 578 U.S. 330, 337-38 (2016) ("The doctrine [of standing] limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong.").  "To have Article III standing to sue in federal court, plaintiffs must demonstrate, among other things, that they suffered a concrete harm." TransUnion LLC v. Ramirez, 594 U.S. 413, 417 (2021).  A plaintiff must prove standing to sue for each claim asserted.  See id. at 431.  Even when faced with an explicit statutory right, "[o]nly those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court."  Id. at 427 (emphasis in original).

The Second Circuit has held that in order to sustain a claim for wage-notice and wage-statement violations in federal court, "a plaintiff must adequately allege a concrete injury-in-fact resulting from the failure to provide the wage notices and wage statements[.]"  Guthrie v. Rainbow Fencing Inc., 113 F.4th 300, 302-03 (2d Cir. 2024).  In order to allege this concrete injury, the "plaintiff must show some causal connection between the lack of accurate notices and the downstream harm."  Id. at 308 (noting that such a connection is not present "unless the plaintiff-employee can show that he or she would have undertaken such advocacy and plausibly

would have avoided some actual harm or obtained some actual benefit if accurate notices had been provided"). Otherwise, NYLL wage-notice and wage-statements claims must be dismissed for lack of standing. See id. at 303, 311.

Following the Second Circuit's holding in Guthrie, courts have found that a plaintiff can establish standing to sue by alleging that "by failing to provide the required wage statements, the employer was able to hide its violations of wage and hour laws and thus prevent the employee from determining and seeking payment for the precise amount of his unpaid wages." Roma v. David Carmili, Physician, P.C., 761 F. Supp. 3d 481, 490 (E.D.N.Y. 2024) (citations, quotation marks & internal brackets omitted) (collecting cases) (finding sufficient standing when the plaintiff alleged that the defendant's wage-statement violations "prevented her from 'ascertain[ing] the amounts she was supposed to be paid, the number of hours she worked during each pay period, and the amount(s) of any and all deductions that [the defendants] were taking from her pay'").

Here, the Court finds that Plaintiffs have established a concrete injury stemming from Defendants' failures to provide wage notices and wage statements. Messrs. Gomez Cruz, Reynaldo Perez, Luna and Flores Godines each allege that because Defendants did not provide wage notices or wage statements, each Plaintiff "was prevented from: (i) comparing his rate of pay to his hours worked; (ii) realizing that he was underpaid; and (iii) advocating for himself and/or taking appropriate action to obtain the payments due to him." Compl. ¶¶ 50, 67, 82, 98. Although Plaintiffs eventually engaged in this litigation to recover their unpaid wages, Plaintiffs have alleged that, if they had had more knowledge of their wages in comparison with wage-and-hour laws, they might have taken other "appropriate action" to collect their owed wages. Id.

Plaintiffs' inability to pursue other means to recover their monies owed is sufficient to establish standing for Plaintiffs' wage-notice and wage-statement claims.

As to the merits of Plaintiffs' claims, Plaintiffs have alleged that Defendants failed to provide Plaintiffs with "an accurate statement of wages," and that Defendants failed to provide any notices to Plaintiffs regarding their "rate[s] of pay, employer's regular pay day, and such other information as required by NYLL § 195(1)." Id. ¶¶ 48-49, 65-66, 80-81, 96-97. Accepted as true for the purposes of this motion, Plaintiffs have sufficiently alleged that Defendants have therefore failed to comply with the NYLL's wage-notice and wage-statement provisions. See N.Y. Lab. L. § 195.

As such, the Court respectfully recommends that Defendants be found liable to Plaintiffs for wage-notice and wage-statement violations under the NYLL.

### D.    Damages

Before entering a default judgment, the court "must find a basis for the damages specified in the default judgment." Zabrodin, 702 F. Supp. 3d at 113. The court has an "obligation to ensure that the damages [are] appropriate." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 111 (2d Cir. 1997). "Even when a default judgment is warranted based on a party's failure to defend [an action], the allegations in the complaint with respect to the amount of damages are not deemed true." Credit Lyonnais, 183 F.3d at 155.

In order to determine damages, the court may "presume the accuracy of [plaintiffs'] recollection and estimates of hours worked set forth in their affidavits and damages calculations." Cao, 727 F. Supp. 3d at 296. Because, under the FLSA, the employer bears the burden to track the hours an employee works, "[a] plaintiff need not compute FLSA damages

with precision." Harold Levinson Assocs., Inc. v. Chao, 37 F. App'x 19, 20 (2d Cir. 2002)

(summary order). "However, it remains the plaintiffs' burden to prove damages to a 'reasonable

certainty.'" Lopez v. Yossi's Heimishe Bakery Inc., No. 13 Civ. 5050 (FB) (CLP), 2015 WL

1469619, at *9 (E.D.N.Y. Mar. 30, 2015) (quoting Credit Lyonnais, 183 F.3d at 155). In order

to establish this reasonable certainty, the court must "determin[e] the proper rule for calculating

damages . . . and assess[] [the] plaintiff's evidence supporting the damages to be determined

under this rule." Credit Lyonnais, 183 F.3d at 155.

"Detailed affidavits and other documentary evidence can suffice in lieu of an evidentiary

hearing." Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012). Nevertheless,

a court may deny a default judgment motion if "[t]he record evidence does not provide a

sufficient basis for determining a damages award." Singh v. Mowla, No. 19 Civ. 4687 (PKC)

(LB), 2022 WL 17820099, at *11 (E.D.N.Y. Sept. 30, 2022) (finding it "impossible" to calculate

damages for a plaintiff who only provides "an approximate year or time of year when he worked

as well as his general shift times"). A court may also decline to award damages in a default

judgment motion if the plaintiff cannot prove damages to a reasonable certainty, "even where

liability has been established[.]" HTV Indus., Inc. v. Agarwal, 317 F. Supp. 3d 707, 717

(S.D.N.Y. 2018).

Here, even though Plaintiffs have established Defendants' liability as to several of their

claims, the Court is unable to determine the proper amount of damages to be awarded with

reasonable certainty. Plaintiffs fail to give specific time periods as to the beginnings and endings

of their employment, Plaintiffs' changes in daily wages and Plaintiffs' changes in hours.

Plaintiffs' declarations do not give specific weeks or even specific months for major shifts in

Plaintiffs' employment periods, such as increases in salary, and the beginning and end of their

employment. Instead, Plaintiffs' declarations generally rely on general statements based on "approximately" a calendar year, or "on or about" a given month. See, e.g., Gomez Cruz Decl. ¶¶ 9, 12, 14-15; Reynaldo Perez Decl. ¶¶ 9, 12, 14-17; Luna Decl. ¶¶ 9, 12, 14-15; Flores Godines Decl. ¶¶ 9, 12-13, 15. With respect to Mr. Flores Godines's damages in particular, the Court lacks information as to the weeks in which he worked sixty, as opposed to fifty, hours per week. See Flores Godines Decl. ¶ 13. Ambiguities in Plaintiffs' declarations would have significant implications calculating how much money Plaintiffs are owed in overtime premiums and missing minimum wages.[10] Because the Court cannot resolve these ambiguities based on Plaintiffs' submissions as they stand, the Court cannot award damages in Plaintiffs' default judgment motion at this juncture.[11]

The Court notes that, based on Plaintiffs' approximated and general allegations, they have sufficiently established Defendants' liability for several portions of Plaintiffs' employment, even though the Court cannot calculate damages to a reasonable certainty based on Plaintiffs' submissions, such that the Court respectfully recommends denying the damages motion without prejudice. Although the Court understands that it may be difficult for Plaintiffs to recollect with

---

[10] Plaintiffs' statement of damages attempts to break down Plaintiffs' damages by pay period, but the statement does not state why Plaintiffs chose the start and end dates utilized. See Sojo Decl. Ex. I. This statement also incorrectly states the filing date of this action, see id. at 2, although this error does not appear to affect the start and end dates listed in the damages chart. Nevertheless, the Court cannot base a damages calculation on the numbers listed in Plaintiffs' counsel's statement.

[11] In addition to compensatory damages, Plaintiffs also seek liquidated damages, pre-judgment interest and attorneys' fees and costs. See Sojo Decl. ¶¶ 42-57. As Plaintiffs' liquidated damages and interest would be calculated alongside any award of compensatory damages, and as Plaintiffs' counsel are likely to request additional fees, the Court declines to consider Plaintiffs' requests for additional damages, interest and attorneys' fees and costs at this time. The Court respectfully recommends that these requests be denied without prejudice, and that leave be granted for Plaintiffs' damages motion to request these additional awards as well.

specificity the days of their employment, and the Court may rely on their best recollections, Plaintiffs' motion papers do not identify or explain which dates, hours and calculations the Court should adopt and why.

As such, should the District Court adopt this report and recommendation, the Court respectfully recommends that Plaintiffs be given leave to file a new motion for damages consistent with this report within 30 days of its adoption, if it is adopted. Any updated statement of damages should be sworn or affirmed to by Plaintiffs or other persons with personal knowledge of Plaintiffs' damages and should include a week-by-week approximation of Plaintiffs' hours worked and daily wages. The Court does note that Mr. Reynaldo Perez's and Mr. Luna's submissions imply that they worked without a break in employment throughout the Covid-19 pandemic. Any future submissions should either confirm this point or correct it. If Plaintiffs' counsel seeks attorneys' fees, counsel should submit updated billing records and invoices for this action along with any motion for damages. If the District Court refers the damages motion to the undersigned, Plaintiffs' counsel are to email a "live" spreadsheet of their damages calculation to scanlon_chambers@nyed.uscourts.gov.

## IV.    CONCLUSION

For the reasons stated above, the undersigned respectfully recommends that Plaintiffs' motion for default judgment be granted in part and denied in part as to liability, and denied without prejudice as to damages. First, the undersigned respectfully recommends that Defendants be found liable for the relevant periods as described below:

(1) to Mr. Gomez Cruz for overtime violations under the FLSA and the NYLL, and wage-notice and wage-statement violations under the NYLL;

43

(2) to Mr. Reynaldo Perez for overtime violations under the FLSA beginning April 9, 2021; for overtime violations under the NYLL beginning January 1, 2018; for minimum-wage violations under the NYLL from December 31, 2019, to December 31, 2020; and for wage-notice and wage-statement violations under the NYLL beginning August 24, 2017;

(3) to Mr. Luna for overtime violations under the FLSA beginning April 9, 2021; for overtime violations under the NYLL beginning April 1, 2018; and for wage-notice and wage-statement violations under the NYLL beginning August 24, 2017; and

(4) Mr. Flores Godines for overtime violations under the FLSA and the NYLL, and wage-notice and wage-statement violations under the NYLL.

Second, the undersigned respectfully recommends that Plaintiffs' motion for default judgment be denied as to Mr. Gomez Cruz's minimum-wage claims, Mr. Reynaldo Perez's minimum-wage claims under the FLSA, Mr. Luna's minimum-wage claims, Mr. Flores Godines's minimum-wage claims and any claims outside the limitations periods as described above.  Third, the undersigned respectfully recommends that Plaintiffs' motion for default judgment be denied without prejudice as to Plaintiffs' damages, and that Plaintiffs be permitted to file a motion for damages and other monetary relief based on supporting evidence, sworn or affirmed to by Plaintiffs or other persons with personal knowledge, consistent with this report and recommendation within 30 days of its adoption, if it is adopted.

## V.    OBJECTIONS

If a defendant wishes to oppose the proposed partial entry of a default judgment, that defendant must appear and file written objections.  Any party's written objections to this report and recommendation must be filed with the Clerk of the Court within fourteen (14) days of

service of this report.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b).  Any request for an extension of time for filing objections must be directed to the District Judge prior to the expiration of the fourteen-day objection period.  Failure to timely file objections will preclude further review of this report and recommendation either by the District Court or the Court of Appeals.  See Miller v. Brightstar Asia, Ltd., 43 F.4th 112, 120 (2d Cir. 2022).

The Court will mail a copy of this report and recommendation as well as the docket to Defendant Ding Feng Lin Construction LLC at 6143 170th Street, Floor 3, Fresh Meadows, New York 11365 and at 8426 86th Street, Woodhaven, New York 11421, and to Defendant He Shun Chen at 46-11 7th Avenue, 2nd Floor, Brooklyn, New York 11220.  The Court will also e-mail a copy of this report and recommendation to the listed available e-mail address for DFL on a government transportation database: tonytruckingIII@gmail.com.

Dated: Brooklyn, New York
       August 15, 2025

*Vera M. Scanlon*
_____
     VERA M. SCANLON
  United States Magistrate Judge